THE NATIONAL HOME BUILDING AND LOAN ASSOCIATION

v.

THE HOME SAVINGS BANK et al.

*Opinion filed June 20, 1899—Rehearing denied October 6, 1899.*

1. CORPORATIONS—*when corporation is estopped to plead ultra vires.* A corporation having received the benefit of a contract may be estopped to raise the defense. of *ultra vires* where the contract is within its power but there has been a failure to comply with some regulation or the power has been improperly exercised.

2. SAME—*corporation is not estopped to raise defense of ultra vires if power is wanting.* A contract beyond the power of a corporation is void, and the fact the corporation has received the benefit thereof or the other party has acted thereunder does not estop the corporation from raising the defense of *ultra vires.* (CARTER, J., dissenting.)

3. SAME—*one dealing with corporation of limited powers is chargeable with notice.* A party dealing with a corporation having limited and delegated powers conferred by law is chargeable with notice of them and their limitations, and cannot plead ignorance in avoidance of the defense of *ultra vires.*

4. LOAN ASSOCIATIONS—*loan association cannot trade in real estate.* A loan association organized under the law of 1879, (Laws of 1879, p. 83,) has no power to acquire and hold real estate except such as has been mortgaged to it or in which it has an interest, and contracts made for the purchase of real estate in which it has no interest are not enforceable.

5. SAME—*when loan association is not liable for deficiency on foreclosure.* A building and loan association has no power, in exchanging properties, to acquire a lot in which it had no interest and assume an encumbrance thereon, and no deficiency decree can be rendered against it on foreclosure of the encumbrance.

*Nat. Home Building Ass.v.Home Sav. Bank,*79 Ill. App. 303, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook·county; the Hon. NATHANIEL C. SEARS, Judge, presiding.

CUTTING, CASTLE & WILLIAMS, and WAGNER, BINGHAM & LONG, for appellant:

A building and loan association has no power to purchase real estate upon which it had no mortgage, lien

| | |
|---|---|
| 181 | 35 |
| 85a | 472 |
| 85a | 473 |

| | |
|---|---|
| 181 | 35 |
| f185 | 39 |
| 87a | 59 |

| | |
|---|---|
| 181 | 35 |
| 186 | 1198 |

| | |
|---|---|
| 181 | 35 |
| 187 | 2143 |
| d90a | 2292 |
| 91a | 2550 |

| | |
|---|---|
| 181 | 35 |
| 188 | 2 39 |
| f92a | 2 33 |
| 92a | 3 33 |
| e92a | 4180 |
| e92a | 1181 |

| | |
|---|---|
| 181 | 35 |
| 190 | 1389 |

| | |
|---|---|
| 181 | 35 |
| 97a | 1657 |

| | |
|---|---|
| 181 | 35 |
| d199 | 2211 |

| | |
|---|---|
| 181 | 35 |
| d201 | 4507 |

| | |
|---|---|
| 181 | 35 |
| 105a | 4384 |
| 105a | 4610 |

| | |
|---|---|
| 181 | 35 |
| 204 | 4152 |
| e205 | 1342 |
| d107a | 1346 |

| | |
|---|---|
| 181 | 35 |
| 212 | 1537 |
| 212 | 1541 |
| 114a | 2201 |
| 114a | 3433 |

| | |
|---|---|
| 181 | 35 |
| 215 | 3194 |
| 115a | 1496 |

or other encumbrance or in which it had no interest, and therefore it has no power to assume and agree to pay a mortgage on such real estate so purchased by it.    Rev. Stat. chap. 32, sec. 13; *Railroad Co. v. Collins*, 40 Ga. 582; Reese on Ultra Vires, 9, 10, 17, 21, 48, 54, 55, 81, 85; *Head v. Insurance Co.* 2 Cranch, 127; *People v. Insurance Co.* 15 Johns. 357; *Insurance Co. v. Sturges*, 2 Cow. 664; *Perrine v. Canal Co.* 9 How. 172; *Pearce v. Railroad Co.* 21 id. 441; *Hood v. Railroad Co.* 22 Conn. 502; *Thomas v. Railroad Co.* 101 U. S. 71; *Davis v. Railroad Co.* 131 Mass. 258; *Central Trans. Co. v. Pullman Car Co.* 139 U. S. 24; *Coleman v. Railway Co.* 10 Beav. 1; *Lucas v. White Line Trans. Co.* 70 Iowa, 541; *Railway Co. v. Railway Co.* 11 C. B. 775; *Bissell v. Railroad Co.* 22 N. Y. 258; *Jameson v. Bank*, 122 id. 135; *Fridley v. Bowen*, 87 Ill. 154; *Chicago Gas Light Co. v. Gas Light Co.* 121 id. 530; Endlich on Building Ass. (1st ed.) secs. 120, 283, 305, 307; *McCauly v. Building Ass.* 37 S. W. Rep. 212; *People v. Gas Trust Co.* 130 Ill. 268; *Metropolitan Bank v. Godfrey*, 23 id. 579.

There being no power in the association to make the contract to pay the mortgage it could not ratify it.    *Central Trans. Co. v. Pullman Car Co.* 139 U. S. 24; Thompson on Corp. secs. 6007, 6009; Reese on Ultra Vires, secs. 46, 59, 60, 72, 98; *Marble v. Harvey*, 92 Tenn. 115; Morawetz on Corp. p. 551, sec. 581; *Durkee v. People*, 53 Ill. App. 396; *Albert v. Bank*, 1 Md. Ch. 407.

Estoppel cannot be urged against a party to a contract not fully performed.    Thompson on Corp. sec. 6024; *Swan v. Scott*, 11 S. & R. 155; Reese on Ultra Vires, sec. 71.

Relief will not be given when an illegal contract is relied on to sustain it.    *Fridley v. Bowen*, 87 Ill. 151; *Bishop v. Preservers' Co.* 157 id. 284; *Central Trans. Co. v. Car Co.* 139 U. S. 24; Reese on Ultra Vires, secs. 69, 70, 72, 73; 7 Wait's Actions and Defenses, 64; *McNulta v. Bank*, 164 Ill. 427.

A member of a building and loan association is charged with notice of the powers conferred on its officers and the provisions of its charter.    *Citizens' Building Ass. v. Ruhl*, 55 Ill. App. 65; Morawetz on Corp. secs. 580-591; Angell &

Ames on Corp. secs. 288-301; Thompson on Corp. sec. 6009; Reese on Ultra Vires, secs. 52, 53; *Thompson* v. *Paper Co.* 187 Mass. 595; *Bank* v. *Alden,* 129 U. S. 372.

WINSTON & MEAGHER, and ALEXANDER L. WHITE-HALL, (RALPH MARTIN SHAW, of counsel,) for appellees:

If agents conduct themselves so that, if they had been acting for private employers, the person for whom they were acting would have been affected and bound by their conduct, the same rule must prevail when the principal under whom the agent acts is a corporation. *Insurance Co.* v. *Schettler,* 38 Ill. 166; *Inter-State Building Ass.* v. *Ayres,* 177 id. 9; *Merchants' Bank* v. *Bank,* 10 Wall. 604; *Railroad Co.* v. *Schuyler,* 34 N. Y. 30; *Railroad Co.* v. *Quigby,* 21 How. 202; *Bank* v. *Graham,* 100 U. S. 699; *Henderson* v. *Railroad Co.* 17 Tex. 560; *Leopold Rolling Mill Co.* v. *State,* 54 Ga. 635; *Frankfort Bank* v. *Johnson,* 24 Me. 490; *Allison* v. *Railroad Co.* 46 S. W. Rep. 348.

A corporation, like a private individual, may by its acts ratify the unauthorized transactions of its agents. *Drescher* v. *Fulham,* 52 Pac. Rep. 685; *Miller* v. *Matthews,* 40 Atl. Rep. 176; *Ragland* v. *McFall,* 137 Ill. 181.

When the officers or agents of a corporation exercise powers affecting the interests of third parties, which presupposes a delegated authority for that purpose, and other acts subsequently performed show the corporation must have contemplated the legal existence of such authority, the acts of such officers or agents will be deemed rightful and the delegated authority will be presumed. *Insurance Co.* v. *Schettler,* 38 Ill. 166; *Railroad Co.* v. *Dalby,* 19 id. 352; *Miners' Ditch* v. *Zellerbach,* 37 Cal. 543; *Metropole Bath Co.* v. *Fan Co.* 50 Ill. App. 681; *Supervisors* v. *Schenck,* 5 Wall. 772; *Insurance Co.* v. *White,* 106 Ill. 67; *Railroad Co.* v. *Schuyler,* 34 N. Y. 58; *Page* v. *Water Co.* 31 Fed. Rep. 257.

If it is possible, under any hypothetical condition of facts, for an act to be within the express or implied power of a corporation, the corporation will be estopped

in a particular instance to say that the act is not within such expressed or implied power, when such a defense would be to the injury of a party contracting with it, unless the act itself is *malum prohibitum* or *malum in se.* *Bissell* v. *Railroad Co.* 22 N. Y. 258; *Railroad Co.* v. *Schuyler,* 34 id. 30; *Grommes* v. *Sullivan,* 81 Fed. Rep. 45; *Supervisors* v. *Schenck,* 5 Wall. 772; *Railroad Co.* v. *McCarthy,* 96 U. S. 258; *State Board of Agriculture* v. *Railway Co.* 47 Ind. 407; *Miners' Ditch* v. *Zellerbach,* 37 Cal. 543.

The plea of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but, on the contrary, would accomplish a legal wrong.  *Kadish* v. *Building Ass.* 151 Ill. 531; *Whitney Arms Co.* v. *Barlow,* 63 N. Y. 62; *Darst* v. *Gale,* 83 Ill. 136; *Railway Co.* v. *McCarthy,* 96 U. S. 258; *San Antonio* v. *Mehaffy,* id. 312.

When a party dealing with a corporation has acted in good faith and the contract has been completely executed, the corporation receiving the benefit thereof, and nothing remains to be done except the payment by the corporation to the party, the corporation is always estopped to set up its want of authority as a defense, unless the action is *malum in se* or *malum prohibitum.*   This is always the law, even though the party contracting with the corporation knows at the time that the corporation is transacting business beyond its chartered powers. *Bradley* v. *Ballard,* 55 Ill. 413; *Parish* v. *Wheeler,* 22 N. Y. 494; *Towers Excelsior Co.* v. *Inman,* 23 S. E. Rep. 418; *Eckman* v. *Railroad Co.* 169 Ill. 312; *Kadish* v. *Building Ass.* 151 id. 531; *Darst* v. *Gale,* 83 id. 136; *Sioux City Terminal Co.* v. *Trust Co.* 82 Fed. Rep. 124; *Lyon* v. *Bank,* 85 id. 120; *Central Trust Co.* v. *Railway Co.* 87 id. 815; *Speer* v. *Commissioners,* 88 id. 748; *Railroad Co* v. *Thompson,* 103 Ill. 187; *Dimpfel* v. *Railway Co.* 9 Biss. 127; *Union Trust Co.* v. *Railroad Co.* 117 U. S. 434; *Bank* v. *Matthews,* 98 id. 621; *Manufacturing Co.* v. *Metal Co.* 127 N. Y. 452; *Whitney Arms Co.* v. *Barlow,* 63 id. 62; *Woodruff* v. *Railway Co.* 93 id. 609; 29 Ohio St. 330.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

In November, 1893, Flora D. Bishopp made a trade of lots in the city of Chicago with the National Home Building and Loan Association, appellant, in pursuance of which appellant conveyed to her lot 10 in Lee Bros.' addition to Englewood, lots 15 and 16 in block 60 in Chicago University subdivision, and lot 36 in block 2 in Herring's subdivision. In exchange for these lots said Flora D. Bishopp and Jonathan D. Bishopp, her husband, conveyed to the building and loan association lots 5 and 6 in block 2 in Johnson & Clement's subdivision, and in the deed of the same it was agreed that the building and loan association should assume and pay an encumbrance on said lot 5 in the form of a trust deed executed by said Flora D. Bishopp and husband to Charles T. Page, trustee, to secure a note for $3000 and interest. The trade was negotiated and carried out on the part of the association through J. O. Duncan, agent, who was employed by the association to negotiate loans and examine abstracts for it in Chicago, and he acted under the direction of the secretary of the association. After the exchange the association paid a mortgage of $600 on said lot 5 and the delinquent interest on the mortgage assumed in the conveyance. On May 14, 1895, the board of directors passed a resolution that the assumption clause in the deed was made without authority of the association, and directed the execution and tender of a quit-claim deed of the lot to Flora D. Bishopp. The deed was made and tendered unconditionally, and the association thereby offered the lot to her without a return of the consideration or any other condition. The note for $3000, secured by the trust deed, was transferred to the Home Savings Bank, one of the appellees, and it filed its bill in the superior court of Cook county to foreclose the same, asking for a decree against Flora D. Bishopp, a sale of the mortgaged premises, and a decree against the building and loan associa-

tion for such deficiency as might exist. The building and loan association answered that the trade was consummated by direction of its president and secretary, but the clause assuming the mortgage was inserted without their knowledge or authority and without the knowledge and authority of its board of directors, that such an agreement was *ultra vires* the corporation, and that it had tendered a quit-claim deed of the lot to the said Flora D. Bishopp. The bill was answered by Flora D. Bishopp and her husband, who admitted its material allegations and filed their cross-bill, alleging the agreement for an exchange of the properties and the conveyances and asking for a deficiency decree against the association. The building and loan association answered the cross-bill, setting up the same defense as before, and the cause was referred to a master, who reported in favor of a foreclosure and sale and a decree against the building and loan association for any deficiency in the payment of the debt, interest, fees and costs. Exceptions to the report were overruled and a decree was entered in accordance with it, which has been affirmed by the Appellate Court.

No objection is made to the foreclosure of the trust deed or the sale of the premises, and the only question involved in this appeal is whether the contract inserted in the deed, by which the defendant, the National Home Building and Loan Association, agreed to assume and pay the debt, is binding upon it. This defendant, which denied the binding force of the agreement, is a corporation organized under the provisions of an act entitled "An act to enable associations of persons to become a body corporate to raise funds to be loaned only among the members of such association," in force July 1, 1879. (Laws of 1879, p. 83.) As a corporation it is a creature of the law, having no powers but those which the law has conferred upon it. A corporation has no natural rights or capacities, such as an individual or an ordinary partnership, and if a power is claimed for it, the words

giving the power or from which it is necessarily implied must be found in the charter or it does not exist. The law on this subject is stated by the Supreme Court of the United States in *Central Transportation Co.* v. *Pullman Palace Car Co.* 139 U. S. 24, as follows: "The charter of a corporation, read in the light of any general laws which are applicable, is the measure of its powers, and the enumeration of those powers implies the exclusion of all others not fairly incidental." The purpose of this corporation is the raising of funds to be loaned to its members upon the security of its stock and unencumbered real estate. Manifestly the business of trading in real estate or acquiring the same, except as incidental to their legitimate business, is wholly foreign to the purpose for which the State has created such corporations and conferred upon them corporate powers. They have no power to take and hold real estate, and contracts made for the purchase of it are not enforceable. (Endlich on Building Associations, secs. 305-308.) But for the purpose of collecting debts it is essential that they should have some power with respect to the real estate mortgaged to them, and for that purpose section 13 of the act for their incorporation provides as follows: "Any loan or building association incorporated by or under this act is hereby authorized and empowered to purchase at any sheriff's or other judicial sale, or at any other sale, public or private, any real estate upon which such association may have or hold any mortgage, lien or other encumbrance, or in which said association may have an interest, and the real estate so purchased, to sell, convey, lease or mortgage at pleasure to any person or persons whatsoever." Such corporations are not authorized, either by their charters or as an incident to their existence, to acquire or hold any real estate, except such as has been mortgaged to them or which they may have an interest in. Not only is this the rule to be derived from the act of the legislature authorizing their incorporation, under the general principles of law, but it

is, and always has been, against the policy of the State
to permit corporations to accumulate landed estates, or
to own real estate beyond what is necessary for their
corporate business or such as is acquired in the collec-
tion of debts. (*Carroll* v. *City of East St. Louis,* 67 Ill. 568;
*United States Trust Co.* v. *Lee,* 73 id. 142; *People* v. *Pullman
Palace Car Co.* 175 id. 125; *First M. E. Church of Chicago* v.
*Dixon,* 178 id. 260.) It is also a settled principle of Ameri-
can jurisprudence. (5 Thompson's Law of Corporations,
sec. 5772.) If a building and loan association were per-
mitted to invest its money in the purchase of real estate
or to traffic or trade in such property instead of keep-
ing within the powers conferred upon it by loaning such
money and collecting it, it would not only be exercising
powers not granted, but it would be carrying on a busi-
ness inconsistent with the purpose of its creation and
against the fixed and uniform policy of the State. In
*People ex rel.* v. *Chicago Gas Trust Co.* 130 Ill. 268, it was said
(p. 292): "The word 'unlawful,' as applied to corpora-
tions, is not used exclusively in the sense of *malum in se*
or *malum prohibitum.* It is also used to designate powers
which corporations are not authorized to exercise, or con-
tracts which they are not authorized to make, or acts
which they are not authorized to do,—or, in other words,
such acts, powers and contracts as are *ultra vires.*" In
*Central Transportation Co.* v. *Pullman Palace Car Co. supra,*
the result of the decisions as to the exercise of powers
not granted is summed up, as follows: "All contracts
made by a corporation beyond the scope of those powers
are unlawful and void, and no action can be maintained
upon them in the courts,—and this upon three distinct
grounds: the obligation of every one contracting with
a corporation to take notice of the legal limits of its
powers; the interest of the stockholders not to be sub-
jected to risks which they have never undertaken; and
above all, the interest of the public that the corporation
shall not transcend the powers conferred upon it by law."

It is first contended, in support of the decree, that the contract by which the corporation assumed and agreed to pay the mortgage on lot 5 as a part of the consideration was within its powers. The ground of this claim is, that the corporation had a mortgage on lot 6, (the other lot which was conveyed to it,) and the acquisition of that lot was a legitimate exercise of power. We do not see how the fact that it had power to purchase one lot would operate to give it power to purchase another. The right to acquire property in which it had an interest could not be extended to other property in which it had no interest. If it could make a loan on a lot and buy other property in the vicinity or adjoining it by merely including in the deed the mortgaged lot, the law would be evaded and the policy of the State subverted. The law has given such a corporation power to purchase such real estate as it has a mortgage on for its necessary protection in making collections, but that does not authorize it, by including such real estate, to buy another lot or a subdivision or part of a town, and enter into the business of trading in real estate. If it could not purchase lot 6, upon which it held a mortgage, without buying other real estate, it was not authorized to buy it at all.

It is also argued that the building and loan association is estopped to raise the question whether the contract was *ultra vires* because it has received the benefit of the contract by the conveyance of property to it. That depends, as we think, upon the sense in which the term *ultra vires* is used. It has been applied indiscriminately to different states of fact in such a way as to cause considerable confusion. When used as applicable to some conditions, it has been frequently said that a corporation is estopped to make such a defense where it has received the benefit of the contract. For example, the term has been applied to acts of directors or officers which are outside and beyond the scope of their authority, and therefore are invasions of the rights of stockholders, but

which are within the powers of the corporation. In such a case the act may become binding by ratification, consent and acquiescence, or by the corporation receiving the benefit of the contract. Again, it has been applied to cases where an act was within the authority of the corporation for some purposes or under some circumstances, and where one dealing in good faith with the corporation had a right to assume the existence of the conditions which would authorize the act. Where an act is not *ultra vires* for want of power in the corporation but for want of power in the agent or officer, or because of the disregard of formalities which the law requires to be observed, or is an improper use of one of the enumerated powers, it may be valid as to third persons. In the more proper and legitimate use of the term it applies only to acts which are beyond the purpose of the corporation, which could not be sanctioned by the stockholders. There would, of course, be no power to confirm or ratify a contract of that kind, because the power to enter into it is absolutely wanting. If there is no power to make the contract there can be no power to ratify it, and it would seem clear that the opposite party could not take away the incapacity and give the contract vitality by doing something under it. It would be contradictory to say that a contract is void for an absolute want of power to make it and yet it may become legal and valid as a contract, by way of estoppel, through some other act of the party under such incapacity, or some act of the other party chargeable by law with notice of the want of power.

The powers delegated by the State to the corporation are matters of public law, of which no one can plead ignorance. A party dealing with a corporation having limited and delegated powers conferred by law is chargeable with notice of them and their limitations, and can not plead ignorance in avoidance of the defense. (*Franklin Co.* v. *Lewiston Institution for Savings,* 68 Me. 43; *New Orleans, Florida and Havana Steamship Co.* v. *Ocean Dry Dock*

*Co.* 28 La. Ann. 173.) Concerning this subject it is said in *Thomas* v. *West Jersey Railroad Co.* 101 U. S. 71: "To hold that this can be done is, in our opinion, to hold that any act done under a void contract makes all its parts valid, and that the more you do under a contract forbidden by law the stronger the claim to its enforcement in the courts." We quote again from *Central Transportation Co.* v. *Pullman Palace Car Co.*, as follows: "The view which this court has taken of the question presented by this branch of the case, and the only view which appears to us consistent with legal principles, is as follows: A contract of a corporation which is *ultra vires* in the proper sense,— that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature,—is not voidable only, but wholly void and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity or be the foundation of any right of action upon it. When a corporation is acting within the general scope of the powers conferred upon it by the legislature, the corporation, as well as persons contracting with it, may be estopped to deny that it has complied with the legal formalities which are pre-requisites to its existence or to its action, because such pre-requisites might in fact have been complied with. But when the contract is beyond the powers conferred upon it by existing laws, neither the corporation nor the other party to the contract can be estopped, by assenting to it or by acting upon it, to show that it was prohibited by those laws." See, also, Reese on Ultra Vires, secs. 46-72, for a full discussion of the subject. In *Durkee* v. *People,* 155 Ill. 354, the same rules were laid down, and it was pointed out that the cases where a corporation is estopped from

asserting that a contract is *ultra vires* when it has received a benefit under the contract is where the making of the contract is within the scope of the franchise, and the contract is sought to be avoided because there was a failure to comply with some regulation or the power was improperly exercised. The following was there quoted from the opinion in *Davis* v. *Old Colony Railroad Co.* 131 Mass. 258: "There is a clear distinction, as was pointed out by Mr. Justice Campbell in *Zabriskie* v. *Cleveland, Columbus and Cincinnati Railroad Co.*, by Mr. Justice Hoar in *Monument Bank* v. *Globe Works*, and by Lord Chancellor Cairns and Lord Hatherley in *Ashbury Railway Carriage and Iron Co.* v. *Riche*, between the exercise by a corporation of a power not conferred upon it, varying from the objects of its creation as declared in the law of its organization, of which all persons dealing with it are bound to take notice, and the abuse of a general power or the failure to comply with prescribed formalities or regulations in a peculiar instance, when such abuse or failure is not known to the other contracting parties."

The cases in this court where the corporation has been held to be estopped have been where the act complained of was within the general scope of the corporate powers. *Ottawa Northern Plank Road Co.* v. *Murray*, 15 Ill. 336, was a case where the corporation was expressly authorized to borrow money and to mortgage its road. Money was borrowed and received by the corporation and a bond and mortgage were executed. The corporation sought to question the official character of the persons who borrowed the money and executed the mortgage as directors of the company. It was held that the corporation could not dispute their official relation after receiving the money.

In *Bradley* v. *Ballard*, 55 Ill. 413, the North Star Gold and Silver Mining Company had given its notes for borrowed money. The court said: "The borrowing of the money was not, in itself, an act *ultra vires*, nor was the giving of the notes. The money was not borrowed to be

used for an illegal or immoral purpose. The lenders have been guilty of no violation of law nor wrong of any kind." The bill was filed in the case by one of the stockholders to enjoin the payment of the notes, because the money was appropriated to mining in the territory of Colorado. It was not decided whether engaging in mining in Colorado was *ultra vires* or not, but the doctrine of *ultra vires* has never been carried to the extent of requiring one who honestly lends money to a corporation authorized to borrow it, to see that it is not applied to an improper purpose. The transaction was perfectly lawful and not *ultra vires* the corporation, and the rights of the lender were maintained, with some natural and proper remarks about honesty as applied to corporations.

In *Darst* v. *Gale*, 83 Ill. 136, an insurance company borrowed money which it had a right to borrow to carry on its business, and mortgaged real estate to secure its payment. A purchaser of the real estate subsequent to the trust deed, and therefore subject to it, tried to avoid the encumbrance on the ground that the company had no right to execute the mortgage. The court said: "That in certain cases it might have lawfully done so, even against the remonstrance of those who had the right to directly interfere in its management, we think can admit of but little controversy." It was deemed unimportant whether it was in fact necessary to make the mortgage, because, conceding that the evidence did not show such a necessity, the defense could not be availed of by the corporation, or by the purchaser, who bought with full knowledge of the trust deed. The case belongs to a class already explained. The corporation had the right to do the very thing complained of, and neither it nor the purchaser could set up that the requisite conditions for the exercise of the power did not exist.

In *Kadish* v. *Garden City Equitable Loan and Building Ass.* 151 Ill. 531, the court purposely avoided deciding whether corporations for manufacturing purposes could become

members of homestead and loan associations, and whether such an association could loan money for general business purposes. The corporation had a right to loan money and the loans were made to actual members. All that was insisted upon was, that the borrowers, though in fact members, were ineligible to membership, and the money was applied to general business purposes. It was held that the eligibility to membership could not be questioned nor the purpose for which the money was borrowed, and the term *ultra vires,* as there used and defined, did not embrace unlawful acts which the corporation could not perform as being different from the purpose of its organization and against the policy of the State.

In this case the transaction was beyond the corporate powers and *ultra vires* in the strict and legitimate sense, and against public policy. It could not be ratified or become valid by acquiescence, since there was no power to make it. Flora D. Bishopp, who dealt with the corporation, was chargeable with notice of its powers and their limitations and its inability to enter into the contract. She could not make the void contract valid by acting under it. No action can be maintained upon the unlawful contract, and in such cases, if the courts can afford any remedy, it cannot be done by affirming or enforcing the contract, but in some other manner.

The decree of the superior court against the National Home Building and Loan Association for any deficiency that may exist, and for execution to collect the same, and the judgment of the Appellate Court affirming said decree in that respect, are each reversed.

*Judgment reversed.*

Mr. Justice Carter, dissenting:

I do not agree to the doctrine announced in the decision of this case, that a corporation may not be estopped from pleading its own lack of corporate power. As I understand the decisions, it has long been the settled

doctrine of this court that where the contract has been wholly executed and the corporation has received the benefit of it, it will be estopped from setting up in defense of payment its own lack of power, under its charter, to enter into the contract, where the contract is not one either *malum in se* or *malum prohibitum.* I do not understand that the application of the doctrine of estoppel is confined to those cases where the contract is within the powers of the corporation, but only beyond the mere authority of its officers or agents. The doctrine of estoppel does not rest upon the principle of agency that there may be a ratification of the unauthorized acts of agents. It has been held, not only by this court but by many others, that in many cases the question of *ultra vires* can only be raised in a direct proceeding by the State to oust the corporation of its assumed and usurped powers. *Bradley* v. *Ballard,* 55 Ill. 413; *Kadish* v. *Garden City Building Ass.* 151 id. 531; *McNulta* v. *Corn Belt Bank,* 164 id. 427; *Eckman* v. *Chicago, Burlington and Quincy Railroad Co.* 169 id. 312; *Darst* v. *Gale,* 83 id. 136.