THE IMPERIAL BUILDING COMPANY, Appellant, *vs.* THE
CHICAGO OPEN BOARD OF TRADE, Appellee.

*Opinion filed December 15, 1908—Rehearing denied Feb. 17, 1909.*

1. CORPORATIONS—*a corporation cannot be organized to hold
real estate for investment.* The general Incorporation act does
not authorize the organization of a corporation for the purpose of
acquiring real estate and erecting a building thereon to rent to tenants or for primary purpose of holding real estate for investment.

2. SAME—*acquiring a lease for ninety-nine years is acquiring
real estate.* A corporation organized for the purpose of acquiring
a ninety-nine year lease of real estate for the erection of a building to be rented to tenants of the corporation must be regarded as
organized for the purpose of acquiring real estate.

3. SAME—*when corporate existence may be attacked collaterally.* To constitute a *de facto* corporation there must be a law authorizing the organization of such a corporation, an attempt in
good faith to organize thereunder and acts of user, in which case
the legality of organization cannot ordinarily be attacked collaterally or questioned by one who has dealt with the supposed corporation as a corporation; but if there is no law authorizing its
organization there is no corporation *de facto* and no estoppel to
deny corporate existence. (*Patterson* v. *Northern Trust Co.* 230
Ill. 341, and 231 id. 28, distinguished.)

4. SAME—*when lessee is not estopped to deny lessor's corporate
existence.* A lessee of a corporation is not estopped to deny the
legal existence of the corporation if there is no law authorizing
its organization, and may make such defense to a judgment, for
rent, confessed under a power of attorney contained in the lease;
but the lessee is liable in some appropriate proceeding for the use
of the premises under his agreement to pay rent.

APPEAL from the Circuit Court of Cook county; the
Hon. R. W. CLIFFORD, Judge, presiding.

TAYLOR & MCWILLIAMS, MCCLANAHAN & MARTIN,
and HUGH L. BURNHAM, for appellant:

The unauthorized purposes named in appellant's charter are surplusage and do not affect the lawful purposes
specified. *Danville* v. *Water Co.* 178 Ill. 299; *Cowell* v.
*Springs Co.* 100 U. S. 55; *Carroll* v. *East St. Louis,* 67 Ill.

568; *Rector* v. *Deposit Co.* 190 id. 380; *Raisor* v. *Railroad Co.* 215 id. 74.

Estoppel arises where corporate existence is acknowledged by contract. *Smith* v. *Mayfield,* 163 Ill. 447; *Mitchell* v. *Deeds,* 49 id. 416; *Willard* v. *Trustees,* 66 id. 55; *Ramsey* v. *Insurance Co.* 55 id. 311; *Lombard* v. *Chicago Sinai Congregation,* 64 id. 477; 1 Clark & Marshall on Private Corp. 282; 8 Am. & Eng. Ency. of Law, (2d ed.) 764; *McCarthy* v. *Lavasche,* 89 Ill. 270; *Dows* v. *Naper,* 91 id. 44; *Winget* v. *Building Ass.* 128 id. 67; *Dunbar* v. *Telephone Co.* 224 id. 9.

Corporations have capacity to take title to real estate. The power to hold can only be questioned by the State. *Stevens* v. *Pratt,* 101 Ill. 206; *Mortgage Co.* v. *Gross,* 93 id. 483; *Assurance Co.* v. *Scammon,* 102 id. 46; *Hough* v. *Land Co.* 73 id. 23; *Dunbar* v. *Telephone Co.* 224 id. 9; *Mapes* v. *Scott,* 94 id. 379; *Hamsher* v. *Hamsher,* 132 id. 286; *Alexander* v. *Tolleston Club,* 110 id. 65; *Barnes* v. *Suddard,* 117 id. 37; *Cooney* v. *Packing Co.* 169 id. 312; *Springer* v. *Real Estate Co.* 202 id. 17; *People* v. *Gas Trust Co.* 130 id. 286; *Fritze* v. *Building Society,* 188 id. 183; *Building Ass.* v. *Bank,* 181 id. 35; *Brewing Co.* v. *Klassen,* 185 id. 37.

A leasehold interest in real estate is personal property and not real estate. *Thornton* v. *Mehring,* 117 Ill. 55; *White* v. *Walker,* 31 id. 422; *Railway Co.* v. *People,* 153 id. 409; *Davenport* v. *Farrar,* 1 Scam. 315; *Denegre* v. *Walker,* 214 id. 213; *Marsh* v. *Reed,* 184 id. 263; 1 Washburn on Real Prop. (5th ed.) 21; 2 Kent's Com. (13th ed.) 342; 1 Blackstone, (Cooley's ed.) book 2, pp. 143, 386.

NEWMAN, NORTHRUP, LEVINSON & BECKER, BEN F. BRADY, and CHESTER E. CLEVELAND, for appellee:

The plaintiff's charter was void and it has no capacity to maintain this suit. *Carroll* v. *East St. Louis,* 67 Ill. 568.

The plaintiff was formed for the purpose of acquiring and holding an interest in specific land or real estate for a term of not exceeding ninety-nine years. A ninety-nine year lease is a chattel real and is an interest in land or real estate. 5 Am. & Eng. Ency. of Law, 1024; *Knapp v. Jones,* 143 Ill. 375; *Bank v. Adam,* 138 id. 483; *Fifield v. Bank,* 148 id. 163; *Madison v. Madison,* 206 id. 534.

The law did not authorize the incorporation of plaintiff for the object stated, but, on the contrary, the formation of a corporation for such purpose was against the public policy of the State of Illinois. Rev. Stat. chap. 32, secs. 1, 5, 26; *Bixler v. Summerfield,* 195 Ill. 147; *Carroll v. East St. Louis,* 67 id. 568; *First M. E. Church v. Dixon,* 178 id. 260.

Such public policy covers leasing as well as buying land or real estate. "Land" and "real estate" are synonymous in the view of such public policy, and they refer rather to the subject matter of control and ownership than to technical estates therein. Rev. Stat. chap. 32, sec. 5; chap. 30, sec. 38; chap. 77, sec. 3; 7 Am. & Eng. Ency. of Law, 720; *Knapp v. Jones,* 143 Ill. 375; *Bank v. Adams,* 138 id. 483; *Fifield v. Bank,* 148 id. 163.

Plaintiff is not a *de facto* corporation. It is essential to the existence of a corporation *de facto* that there be a law under which such a corporation *de jure* could be formed. *Gillette v. Railways Co.* 228 Ill. 261; *Schuetzen Bund v. Agitations Verein,* 44 Mich. 313; 1 Clark & Marshall on Corp. 245; Elliott on Private Corp. 73; 8 Am. & Eng. Ency. of Law, 749.

The plaintiff, its charter being void, has no capacity to sue, and its corporate existence can be collaterally questioned. *Gillette v. Railways Co.* 228 Ill. 261; *Trust Co. v. Railroad Co.* 157 id. 641; *Fritze v. Building Society,* 186 id. 183; *Harriman v. Southam,* 16 Ind. 190; *Schuetzen Bund v. Agitations Verein,* 44 Mich. 313; Elliott on Private Corp. sec. 70.

Mr. Justice Farmer delivered the opinion of the court:

Appellant procured a judgment by confession in the circuit court of Cook county against appellee upon a warrant of attorney contained in a lease in which appellant was lessor and appellee lessee. Thereafter appellee entered a motion to vacate the judgment and for leave to plead, but the circuit court denied the motion. The appellee thereupon appealed to the Appellate Court, and that court reversed the order and judgment of the circuit court and remanded the case, with directions to vacate the judgment and give leave to appellee to plead. (*Chicago Open Board of Trade* v. *Imperial Building Co.* 136 Ill. App. 606.) Upon the case being re-docketed in the circuit court appellee pleaded non-assumpsit and *nul tiel* corporation. In its opinion the Appellate Court held that the appellant was not a corporation; that it was organized for a purpose for which corporations are forbidden by law to be organized, and that its charter was therefore void and the existence of appellant as a corporation subject to be collaterally attacked. When the case came on for trial in the circuit court it was the view of that court that the opinion of the Appellate Court was binding and must control the decision of the case in the trial court, and at the conclusion of the evidence the jury were instructed to return a verdict in favor of the defendant. Upon the return of such verdict the court entered judgment against the plaintiff for costs, and this appeal is prosecuted from that judgment.

The substance of the errors assigned is, that the court erred (1) in holding the charter of appellant void; (2) in refusing to hold appellee was estopped from questioning the corporate existence and charter of appellant; and (3) in instructing the jury to find against appellant.

The statement of the purposes for which appellant was organized and granted a certificate of incorporation or char-

ter is, "that the object for which it is formed is to lease for a term not to exceed ninety-nine years, lots 4 and 9 and part of lots 5 and 8, all in block 115, in school section addition to Chicago, for the purpose of erecting thereon a building for the accommodation of tenants, to make leases, collect rents and do all things incident to the management of said property."

It is not controverted that corporations cannot be organized in this State for the purpose of acquiring and holding real estate. The first section of our general Incorporation act (Hurd's Stat. 1905, chap. 32,) reads: "That corporations may be formed in the manner provided by this act for any lawful purpose except banking, insurance, real estate brokerage, the operation of railroads and the business of loaning money: *Provided,* that horse and dummy railroads, and organizations for the purchase and sale of real estate for burial purposes only, may be organized and conducted under the provisions of this act: *And provided further,* that corporations formed for the purpose of constructing railroad bridges shall not be held to be railroad corporations." Section 5 provides that corporations formed under the act "may own, possess and enjoy so much real and personal estate as shall be necessary for the transaction of their business, and may sell and dispose of the same when not required for the uses of the corporation." It is further provided in said section 5 that real estate acquired by the corporation in satisfaction of an indebtedness or liability to it, unless necessary and suitable for the business of the corporation, must be offered at public auction for sale once every year until sold, and that if any such corporation shall not within five years sell land so acquired at public or private sale, the State's attorney is required to proceed by information against the corporation in the circuit court, which court shall have jurisdiction to order the sale of such land or real estate. The last clause of section 26 of the act reads: "And no foreign or domestic corporation es-

tablished or maintained in any way for the pecuniary profit of its stockholders or members, shall purchase or hold real estate in this State, except as provided for in this act."

It is not, and could not reasonably be, contended that under said general Incorporation act a corporation can be organized for the purpose of purchasing and holding real estate. This act has often been before this court, and it has uniformly been held that acquiring and holding real estate are not purposes for which a corporation may be organized but that the organization of corporations for such purposes is forbidden by the statute. (*Bixler* v. *Summerfield,* 195 Ill. 147; *People* v. *Pullman Palace Car Co.* 175 id. 125; *Carroll* v. *City of East St. Louis,* 67 id. 568; *First M. E. Church* v. *Dixon,* 178 id. 260.) Authority is given corporations organized for legitimate purposes, not prohibited by law, to acquire and hold such real estate as may be necessary for the transaction of the business of the corporation, but beyond this, corporations, no matter for what purpose organized, are forbidden to hold real estate, but are required by the statute referred to, to sell the same within five years or be proceeded against by the State's attorney by information. That it has always been contrary to the public policy of this State to permit corporations to acquire and hold real estate was declared in *Carroll* v. *City of East St. Louis, supra,* where in an elaborate opinion the legislation, and the reasons for it, were pointed out.

Appellant, however, contends that it was not the purpose of its incorporation to acquire real estate by lease for ninety-nine years, and that the statement of its objects as set forth in its charter is misleading; that instead of stating the object of the corporation to be to lease, etc., for the purpose of erecting thereon a building for the accommodation of tenants, and to make leases, collect rents and do all things incident to the management of said property, it should state the object to be, "to erect a building for the accommodation of tenants, to make leases, collect rents and

do all things incident to the management of the property, and for that purpose to lease," etc.   The argument made is, that it is a lawful purpose to make leases, collect rents and manage property, and that to carry on the corporation organized for such purposes a building is necessary, and that corporations organized to lease property and collect rents may acquire and hold property to lease and collect the rents from.   If this reasoning is sound there would be no limit to the power of corporations to acquire and hold real estate as investments and the statute would be rendered absolutely nugatory.   Our statute and the declared public policy of the State have ever prohibited corporations acquiring and holding real estate as an investment, and it is perfectly clear that that is what is being attempted by appellant.   The reasons for this policy of our State, as we have said, are well stated in *Carroll* v. *City of East St. Louis, supra,* and need not be repeated here.   In *Bixler* v. *Summerfield, supra,* it was said: "They [corporations] are not authorized to hold real estate for purposes of investment."   The fact that corporations organized for lawful and legitimate purposes may acquire and hold sufficient real estate to enable them to carry out such purposes furnishes no warrant for the organization of corporations to acquire and hold real estate as an investment.   The primary object of appellant's attempted incorporation was not that it might be authorized to make leases and collect rents, but that it might acquire and hold real estate upon which to erect a building for the purpose of leasing and collecting rents from it.   Without first acquiring real estate and erecting the building thereon it could not exercise its incidental powers of leasing and collecting rents, and no transposition of the language describing its objects and purposes can change its status from an unlawful to a lawful organization.   That the primary and controlling purpose for which appellant was organized was unlawful seems so clear as to not require further argument or discussion.

But it is contended that procuring a lease for ninety-nine years is not acquiring real estate; that such leasehold interest must be treated as personal property. It is true that a leasehold interest in land is for some purposes treated as personal property, but generally it is considered a chattel real. (*First Nat. Bank of Joliet* v. *Adam,* 138 Ill. 483; *Knapp* v. *Jones,* 143 id. 375; 7 Am. & Eng. Ency. of Law, (2d ed.) 720; Hurd's Stat. 1905, chap. 30, sec. 38; chap. 77, sec. 3.) To hold otherwise in a case of this character would be to permit corporations to do indirectly what the statute forbids them doing directly.

It is next contended that if appellant's charter be held void it is not subject to be attacked collaterally, and that appellee having entered into a contract with appellant for the leasing of the premises is now estopped to deny its corporate existence. The general rule is, that where there is an attempt in good faith to organize under a law authorizing the incorporation, and corporate functions are exercised, this makes the organization a corporation *de facto,* and its legality cannot be questioned collaterally or by one who deals with it as a corporation. In such cases the introduction in evidence of the charter and proof of user, and that the party seeking to deny the legality of the corporation dealt with it as a corporation, sufficiently proves it a corporation *de facto,* and whether there may have been some irregularities in perfecting the incorporation will not be inquired into. The legality of such incorporation can only be attacked by the State in a direct proceeding. *Ramsey* v. *Peoria Marine and Fire Ins. Co.* 55 Ill. 311; *Smith* v. *Mayfield,* 163 id. 447; *Mitchell* v. *Deeds,* 49 id. 416.

The appellee concedes that this is the rule as to *de facto* corporations but contends that there can only be a *de facto* corporation where there is a law under which the corporation might legally be organized, but that if there is no law authorizing the organization of such corporation its non-existence or invalidity may be set up collaterally. Cook on

Corporations (sec. 234) thus defines a corporation *de facto:* "The corporation is a *de facto* corporation where there is a law authorizing such a corporation and where the company has made an effort to organize under the law and is transacting business in a corporate name." In *American Trust Co.* v. *Minnesota and Northwestern Railroad Co.* 157 Ill. 641, it was contended on behalf of certain corporations that had attempted a consolidation without any law authorizing such consolidation, that the validity of the consolidation, when not questioned by the State, must be sustained as against third persons and wrongdoers. The court held the rule of law was not as broad as contended for, and said (p. 652): "Where there is a *de facto* corporation, its corporate existence, except in a few exceptional cases, cannot be questioned collaterally, and can only be inquired into by the State and in a direct proceeding. (*Hudson* v. *Green Hill Seminary,* 113 Ill. 618.) But in order that there should be a *de facto* corporation two things are essential: First, there must be a law under which the corporation might lawfully be created; and second, user. Where the law authorizes a corporation, and there is an attempt, in good faith, to organize, and corporate functions are thereupon exercised, there is a corporation *de facto,* the legal existence of which cannot ordinarily be questioned collaterally. This is not only the doctrine of *Hudson* v. *Green Hill Seminary, supra,* but of numerous other decisions in this court. And in said *Hudson case* this court quoted with approval the language of the Supreme Court of Indiana in *Williamson* v. *Kokomo Building and Loan Ass.* 89 Ind. 389, as follows: 'The rule stated does not go to the extent of precluding strangers from showing that there was no law authorizing a corporation.' In *Heaston* v. *Cincinnati, etc. Railroad Co.* 16 Ind. 275, it is held that there must be a corporation *de facto* under an authority sanctioning such a corporation *de jure.* In *Eaton* v. *Walker,* 76 Mich. 579, it is said: 'But the two things necessary to show a corpora-

tion, even *de facto,* do not exist. There is no law under which the power they assume might lawfully be created, and the mere fact that they assumed to act as such, even in the full belief that they were legally incorporated, would not constitute them a corporation *de facto.*' (See, also, *Swartwout* v. *Michigan Air Line Railroad Co.* 24 Mich. 389; *Detroit Schuetzen Bund* v. *Detroit Agitations Verein,* 44 id. 313.) In *Evenson* v. *Ellingson,* 67 Wis. 634, it is held that a body which cannot become a corporation *de jure* can not become a corporation *de facto.* In *City of St. Louis* v. *Shields,* 62 Mo. 247, it is held that if a corporation be acting under legislative sanction and color of law its corporate character cannot be questioned collaterally. In *Pape* v. *Capitol Bank,* 20 Kan. 440, in discussing the matter of a *de facto* corporation, it is said by Brewer, J., that the charter of a corporation, with acts of user, is sufficient as against collateral inquiry; that the same principle obtains in respect to incorporations organized under a general law, but that there must in such cases be a law under which the incorporation can be had. And see, also, Cooley's Const. Lim. (6th ed.) p. 310." That to create a corporation *de facto* it is necessary that there be a law authorizing its incorporation, an attempt in good faith to comply with the law, and user, was decided in *Hudson* v. *Green Hill Seminary Co. supra, Marshall* v. *Keach,* 227 Ill. 35, and *Gillette* v. *Aurora Railways Co.* 228 id. 261.

Appellant contends that the question of estoppel arising between parties by reason of a contract was not involved in *American Trust Co.* v. *Minnesota and Northwestern Railroad Co. supra,* and that it is not authority for the proposition that one dealing with a party as a corporation is estopped to deny its legal existence even though there is no law authorizing such incorporation. We do not understand the opinion to be capable of such distinction. In *Eaton* v. *Walker,* cited in the opinion, the Supreme Court of Michigan held that the pretended corporation itself might

deny its legal existence, where there was no law authorizing its organization, when sued by a creditor with whom it had had dealings and to whom it had become indebted.

In *Heaston* v. *Cincinnati, etc. Railroad Co. supra,* also cited in the opinion of this court in the *American Trust Co. case,* the suit was brought by the corporation on a stock subscription. One of the defenses sought to be made was a denial of the existence of the corporation on the ground that its articles of organization were filed before the law authorizing the incorporation was in force. The trial court struck out the paragraph of the answer interposing such defense, and the Supreme Court sustained this action of the trial court on the ground that an answer of *nul tiel* corporation was an answer in abatement and must precede answers to the merits. The court held that in an issue upon such answer the proof must be limited to the question of the existence *de facto* of a corporation under authority sanctioning such a corporation *de jure,* and that mere irregularity in the organization could not be shown collaterally where there was no defect of power, and further discussing the question of estoppel in such cases said: "We have asserted above that the issue of *nul tiel* corporation is upon the existence of a *de facto* corporation where one *de jure* is authorized, and upon this fact rests the doctrine of estoppel to deny the existence of a corporation in certain cases. The estoppel goes to the mere *de facto* organization,—not to the question of legal authority to make an organization. A *de facto* corporation that by regularity of organization might be one *de jure* can sue and be sued, and a person who contracts with such corporation while it is acting under its *de facto* organization, who contracts with it as an organized corporation, is estopped in a suit on such contract to deny its *de facto* organization at the date of the contract. But this does not extend to the question of legal power to organize, hence if an organization is completed where there is no law, or an unconstitutional law, author-

izing an organization as a corporation, the doctrine of estoppel does not apply.—*Harriman* v. *Southam,* 16 Ind. 190; *Brown* v. *Killian,* 11 id. 449; see *Evansville, I. and C. Co.* v. *Evansville,* 15 id. 395."

In *Harriman* v. *Southam,* 16 Ind. 190, cited in the *Heaston case,* the court quoted from *Jones* v. *Cincinnati Type Foundry Co.* 14 Ind. 89, the following: "The doctrine of conclusive estoppel seems more properly applied to cases involving the question of legality of organization, where the fact of an existing statute authorizing, in the given case, such corporation is known to the court, either by judicial notice or by actual evidence in the cause," and added: "In such cases, the power existing, the regularity of its exercise is admitted by the person contracting with the corporation. Here there was no grant of power existing for the creation of the corporation pretended to be organized, and hence no even irregularly organized corporation." In that case it was held that a deed from Harriman to the supposed corporation conveyed no title because the corporation had no legal existence.

In *Snyder* v. *Studebaker,* 19 Ind. 462, the law was stated thus: "The estoppel arises upon matter of fact only, and not upon matter of law. Hence if there be no law which authorized the supposed corporation, or if the statute authorizing it be unconstitutional and void, the contract does not estop the party making it to dispute the existence of the corporation. But if, on the other hand, there be a law which authorized the corporation, then whether the corporators have complied with it so as to become duly incorporated is a question of fact, and the party making the contract is estopped to dispute the organization or the legal existence of the corporation." The rule is stated the same way in Elliott on Law of Private Corporations, sec. 81, and Morawetz on Private Corporations, sec. 758.

In *Patterson* v. *Northern Trust Co.* 230 Ill. 341, and 231 id. 28, the litigation had been pending in the trial court several years. Patterson was an active party to it, and until the rights of the parties were practically determined in that court his position and attitude favored the validity of the lease of the Merrimac Building Company, and he invited the court to so treat it. He did not by any pleading question the corporate existence of the Merrimac Building Company, but being dissatisfied with the results obtained he attempted, in his trial in this court, to assail the validity of the lease. We held he could not at that late stage in the litigation be heard to deny the validity of the lease, the rule being, that after the rights of the parties have been passed upon and adjudicated they will not be permitted to change front and assume a position inconsistent with the attitude they had maintained during the progress of the litigation.

The rule that one dealing with a corporation is not estopped to deny its legal existence on the ground that there was no law authorizing it is based on the principle that the law will not recognize nor lend its aid to the organization as a *de facto* corporation where the law does not authorize or where it forbids such corporation. It is analogous to *ultra vires* acts and contracts of the corporation wholly beyond and outside the general scope of its corporate powers and entirely foreign to the objects and purposes of its creation. Such contracts are held void as against public policy and incapable of being validated and enforced by having acted under them. (*National Home Building Ass.* v. *Home Savings Bank,* 181 Ill. 35, and cases there cited; *Best Brewing Co.* v. *Klassen,* 185 id. 37.) These cases are not in conflict with *Rector* v. *Hartford Deposit Co.* 190 Ill. 380. In that case it was held that where it is sought to raise the question whether a corporation organized for lawful purposes had abused its powers it must be done by the State in a direct attack and cannot be done in a collateral proceeding.

We are not to be understood as holding appellee is not liable in any event for use and occupation of appellant's premises, for we are of the opinion if it occupied them under an agreement to pay rent, a liability was created which may be enforced in some appropriate proceeding, but it can not be enforced in this suit.

We are of opinion the judgment of the circuit court was correct, and it is therefore affirmed.

*Judgment affirmed.*